**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

KAPPA ALPHA THETA FRATERNITY, : 
INC.; KAPPA KAPPA GAMMA : 
FRATERNITY; SIGMA CHI; SIGMA : 
ALPHA EPSILON; SIGMA ALPHA : 
EPSILON—MASSACHUSETTS : 
GAMMA; JOHN DOE 1; JOHN DOE 2; : 
JOHN DOE 3, : Civil Action No.  18-cv-12485
           : 
           Plaintiffs, : 
           : 
           v. : 
           : 
HARVARD UNIVERSITY; PRESIDENT : 
AND FELLOWS OF HARVARD : 
COLLEGE (HARVARD CORPORATION), : 
           : 
           Defendants. : 
_____ : 

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR LEAVE OF COURT TO PERMIT STUDENT**
**PLAINTIFFS TO PROCEED UNDER PSEUDONYMS AND FOR**
**<u>A PROTECTIVE ORDER TO PROTECT THEIR IDENTITIES</u>**

**INTRODUCTION**

Plaintiffs John Doe 1, John Doe 2, and John Doe 3 file this motion pursuant to Federal

Rules of Civil Procedure 5.2(e) and 7, and Local Rules 7.1 and 83.6.11 to ask this Court for

leave to file the underlying action under pseudonyms, and for a protective order requiring all

parties to redact personally identifying information from all court filings, and to limit disclosure

of Plaintiffs' identities.

In this action, plaintiffs seek, among other relief, a judgment declaring that the formation

and enforcement of a student disciplinary policy at Harvard College that punishes

undergraduates who join single-sex organizations (the "Sanctions Policy") violates Title IX of

the Education Amendments of 1972 because it discriminates on the basis of sex, and violates the

Massachusetts Civil Rights Act because Defendants, through threats, intimidation, and coercion, have interfered with plaintiffs' rights to equal protection of the laws.  The Sanctions Policy's formation and enforcement has caused and threatens to cause irreparable reputational and professional harm to John Doe 1, John Doe 2, and John Doe 3.

John Doe 1, John Doe 2, and John Doe 3 seek to proceed pseudonymously in this suit. This case falls squarely within the class of cases in which courts—including courts in the District of Massachusetts—have permitted parties to proceed pseudonymously.  John Doe 1, John Doe 2, and John Doe 3 fear they will suffer harassment and threats for bringing this lawsuit.  They also fear retribution from Defendants for bringing this lawsuit.  They also fear that disclosure of their identities would cause the very reputational and professional harm that this lawsuit seeks to remedy.  And because the issues in this suit are purely legal, are shared by a large class of similarly situated Harvard undergraduates, and John Doe 1, John Doe 2, and John Doe 3 are not public figures, their identities are of little public interest.

Accordingly, Plaintiffs respectfully request that this Court grant this motion to permit John Doe 1, John Doe 2, and John Doe 3 to use pseudonyms in this litigation and for a protective order to shield their identities from disclosure to the public and Defendants, except as necessary to permit Defendants to defend against this action and comply with this Court's orders.

## STATEMENT OF FACTS

As the Complaint explains at greater length, Defendants have publicly announced a Sanctions Policy that punishes students who belong to single-sex organizations, and have very publicly and forcefully linked members of all-male organizations like John Doe 1, John Doe 2, and John Doe 3 to sexual assault at Harvard.  Defendants have made numerous statements suggesting that men in all-male organizations are responsible for Harvard's sexual assaults. Among other statements, Defendants have said that all-male organizations are "unsafe" and

create an undue risk of sexual assault. *See* Harvard University, Task Force on the Prevention of Sexual Assault, *Final Report* 17 (Mar. 7, 2016), http://bit.ly/2PomoSP; Katharine Q. Seelye & Jess Bidgood, *With an Invitation, a Gender Barrier at Harvard Falls*, The New York Times (Sept. 11, 2015), http://bit.ly/2MNIKyv. Defendants have stated that "the social dynamics fostered by single-gender social organizations" contribute to sexual assault at Harvard. Jeff Neal, *Harvard is Trying to End Clubs' Sexual Abuses*, The Wall Street Journal (Apr. 25, 2016), http://bit.ly/2Lbi06e.

Defendants have also condemned individuals like John Doe 1, John Doe 2, and John Doe 3 in striking, morally freighted terms. Defendants have made numerous statements expressing the view that individuals who join and advocate for single-sex organizations are morally blameworthy and deserve to be punished for their views and associations. *See, e.g.*, Harry R Lewis et al., *No Values Tests*, The Harvard Crimson (Sept. 13, 2016), http://bit.ly/2MzT1hx. Defendants have compared the existence of single-sex organizations to segregation in the Jim Crow South and have compared those who advocate for single-sex organizations to segregationists. Caroline S. Engelmayer & Michael E. Xie, *Khurana Speaks Out Against Movement to Oppose Sanctions*, The Harvard Crimson (May 7, 2018), http://bit.ly/2MPsblB; Andrew M. Duehren & Daphne C. Thompson, *Sanctions Could Be Subject to Change, Faust Says*, The Harvard Crimson (Nov. 7, 2016), http://bit.ly/2vXU7dx. Defendants have said that single-sex organizations "perpetuat[e] . . . spaces that are rife with power imbalances," "propagate exclusionary values that undermine those of the larger Harvard College community," that "their fundamental principles are antithetical to [Harvard's] institutional values," and that they "enact[] forms of privilege and exclusion at odds with [Harvard's] deepest values." Letter from Rakesh Khurana, Dean, Harvard Coll., to Drew Gilpin

Faust, President, Harvard Univ. (May 6, 2016), http://bit.ly/2MA1YHU; Letter from Drew Gilpin Faust, President, Harvard Univ., to Rakesh Khurana, Dean, Harvard Coll. (May 6, 2016), http://bit.ly/2BFTHh7.  Defendants have said that "the behaviors and attitudes espoused by unrecognized single gender social organizations at Harvard College remain at odds with the aspirations of the 21st century society to which the College hopes and expects our students will contribute."  C. Ramsey Fahs, *In Most Extensive Comments in Centuries, Porcellian Club Criticizes Final Club Scrutiny*, The Harvard Crimson (Apr. 13, 2016), http://bit.ly/2PCrcEe.

Members of Harvard's faculty have made similarly sweeping statements expressing bias against and animus toward members of single-sex organizations like John Doe 1, John Doe 2, and John Doe 3.  Multiple professors have compared single-sex organizations to segregated institutions in the Jim Crow South.  *See, e.g.*, John S. Rosenberg, *Final-Club Fissures*, Harvard Magazine (Dec. 9, 2016), http://bit.ly/2oaP2tT.  One professor said that single-sex organizations are "grotesque" and stated: "[t]o appreciate how grotesque . . . imagine that it was white people who controlled access" to these organizations "and nonwhite people who were excluded from them."  *Id.*  As to punishing students who join single-sex organizations, the same professor stated, "*[o]f course* we can be intolerant of intolerance, and *of course* we can discriminate against people who discriminate."  *Id.*  Members of the faculty applauded the statement.  *See* C. Ramsey Fahs et al., *After Tense Meeting, Sanctions Motion Tabled Until 2017*, The Harvard Crimson (Dec. 7, 2016), http://bit.ly/2zsJTU6.

Students similarly-situated to John Doe 1, John Doe 2, and John Doe 3 have expressed serious fear of retaliation and reputational harm from remaining in single-sex organizations. Defendants have threatened to go well beyond the current Sanctions Policy and to expel students who join single-sex organizations.  C. Ramsey Fahs, *Behind Closed Doors: How Harvard's*

*Final Clubs Went from Unrecognized to Penalized*, The Harvard Crimson (May 26, 2016), http://bit.ly/2P1rfIy. As one Harvard alumna said, she was "surprised by the fear or the pressure that [undergraduates] had felt in the fall," additionally "noting that one undergraduate woman said she was afraid that she would be expelled for her involvement in a club." *Id.* Members of the Fox Club wrote in a confidential letter to their graduate members, "Harvard University has applied tremendous pressure . . . . We now believe that our individual reputations and careers, as well as the reputation, autonomy and existence of the Fox Club going forward, are at serious risk if we do not act." Letter from Fox Club Undergraduate Leaders to Graduates of the Fox Club (Oct. 19, 2015), http://bit.ly/2MI23cz. Fox Club leaders likened Harvard's pressure to "a gun to [the Club's] head." *Id.*

Defendants stand in a position of power and authority over John Doe 1, John Doe 2, and John Doe 3. They are vulnerable to hidden forms of retaliation and retribution. As the very existence of the Sanctions Policy shows, Defendants have significant power to dictate the personal and professional opportunities of John Doe 1, John Doe 2, and John Doe 3 by use of coercive discipline at Harvard. Defendants and others at Harvard can also use their positions of relative influence to shame, ostracize, stigmatize, and deny further opportunities to John Doe 1, John Doe 2, and John Doe 3 in retaliation for their participation in this lawsuit. Defendants need not take these actions openly, but could readily seek to inflict professional and reputational harm behind closed doors.

Student plaintiffs in other lawsuits challenging discriminatory policies at national universities have experienced severe threats, intimidation, and harassment. Abigail Fisher, who sued the University of Texas at Austin over allegedly discriminatory admissions policies experienced "harassment and threats" because she filed suit. Nick Anderson, *As Harvard's*

*Admissions Policy Goes on Trial, Alleged Victims of Racial Bias Remain Anonymous*,

Washington Post (Oct. 14, 2018), http://bit.ly/2P0AA2B.  Ms. Fisher was subjected to an online

campaign of harassment.  *See* Declaration of Abigail Fisher ("Fisher Decl.") ¶ 6, *Students for*

*Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, No. 1:14-cv-14176-ADB (D.

Mass. Apr. 29, 2016), Dkt. No. 150-4, http://bit.ly/2Qlcbtt.  She was called vile and sexist

names, told to "kill yourself," and was the subject of other threats of physical violence.  *Id.* ¶¶ 4-

6.  This type of harassment would lead any reasonable person to reconsider their involvement in

challenges to discriminatory policies at a major university.  *See id.* ¶¶ 11-12.  Thus, in a recent

lawsuit against Harvard alleging race discrimination in its admissions, the Court agreed that the

plaintiffs should remain anonymous.  *See* Transcript of Status Conference at 13, *Students for*

*Fair Admissions*, No. 1:14-cv-14176-ADB (D. Mass. May 10, 2016), Dkt. No. 152,

http://bit.ly/2P1pxGw; Anderson, *supra* ("'As the court and the parties understand, these students

will remain anonymous because of the harassment and social media ugliness that public

disclosure would allow,' . . . 'The parties recognized that the harassment and threats made to

Abigail Fisher during her lawsuit against the University of Texas [at Austin] compelled everyone

to keep the identities of these students anonymous.'").

## ARGUMENT

### I.   THE COURT SHOULD PERMIT JOHN DOE 1, JOHN DOE 2, AND JOHN DOE 3 TO PROCEED UNDER PSEUDONYMS.

The Court has discretion to permit a litigant to proceed under a pseudonym.  *See Doe v.*

*Bell Atl. Bus. Sys. Servs., Inc.*, 162 F.R.D. 418, 420 (D. Mass. 1995); *MacInnis v. Cigna Grp.*

*Ins. Co. of Am.*, 379 F. Supp. 2d 89, 90 (D. Mass 2005).  "[T]here is a presumption in favor of

disclosure," but the movant "may rebut the presumption by showing that a need for

confidentiality exists."  *Bell Atl.*, 162 F.R.D. at 420.  Thus, "[c]ourts have allowed plaintiffs to

proceed anonymously in cases involving social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of plaintiff's identity." *Id.* Ultimately, the "court must balance the need for confidentiality against the public interest in disclosure." *Id.*; *see also Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992); *Doe v. Von Eschenbach*, No. 06-2131 (RMC), 2007 WL 1848013, at *1 (D.D.C. June 27, 2007).

The First Circuit has not fixed a standard for determining when a litigant may employ a pseudonym. Federal courts have nonetheless identified factors that should be considered. The District of Massachusetts, in *Doe v. Word of Life Fellowship, Inc.*, No. 11-40077-TSH, 2011 WL 2968912, at *1 (D. Mass. July 18, 2011), noted with approval the factors set forth by the United States District Court for the Eastern District of Pennsylvania in *Doe v. Provident Life & Accident Insurance Co.*, 176 F.R.D. 464, 467-68 (E.D. Pa. 1997), to determine whether or not to disclose a litigant's identity. *See also Doe v. Standard Ins. Co.*, No. 15-cv-00105-GZS, 2015 WL 5778566, at *3 (D. Me. Oct. 2, 2015) (using *Provident Life* factors in deciding to grant plaintiff's motion to proceed under a pseudonym). The Third Circuit has since endorsed the *Provident Life* factors. *See Doe v. Megless*, 654 F.3d 404, 409-10 (3d Cir. 2011). *Provident Life*'s non-exhaustive list of factors to be weighed in favor of pseudonymity include:

    (1) the extent to which the identity of the litigant has been kept confidential;

    (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases;

    (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity;

    (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identit[y];

    (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and

(6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Provident Life*, 176 F.R.D. at 467-68. Conversely, among the factors which militate against the use of a pseudonym are the following:

(7) the universal level of public interest in access to the identities of litigants;

(8) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identit[y], beyond the public's interest which is normally obtained; and

(9) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id*. at 468.

**A.    The *Provident Life* Factors Overwhelmingly Favor Pseudonymity in this Case.**

As explained more fully below, the balance of interests strongly favors permitting John Doe 1, John Doe 2, and John Doe 3 to proceed pseudonymously. John Doe 1, John Doe 2, and John Doe 3 have a substantial privacy interest that outweighs the public's minimal interest in access to their identities. John Doe 1, John Doe 2, and John Doe 3 are not public figures. John Doe 1, John Doe 2, and John Doe 3 have maintained confidentiality regarding their involvement in this litigation and revealed their involvement only to a small inner circle of persons with a need to know. Public disclosure of their identities would deter them from asserting their rights in this action and would deter others who are similarly situated from asserting their rights as well. And while the public has a strong interest in the *legal issues* John Doe 1, John Doe 2, and John Doe 3 raise in their Complaint—issues of fairness, the right to be free from gender bias and sex stereotyping, and the right to associate with individuals of the same sex—their *identities* are of minimal importance to the public. Lastly, because this case seeks relief from the Defendants' discriminatory student disciplinary policy, John Doe 1, John Doe 2, and John Doe 3 have a

reasonable fear that they will suffer personal and social repercussions and reputational harm if they are forced to litigate under their names.  Indeed, the injury to John Doe 1, John Doe 2, and John Doe 3's reputations and professional opportunities that they seek to remedy through this action would instead *occur* if they were forced to disclose their identities in a highly public litigation that highlights their participation in single-sex organizations.

Courts in this district have consistently permitted plaintiff-students like John Doe 1, John Doe 2, and John Doe 3 to proceed under pseudonyms in lawsuits against their colleges and universities for alleged Title IX violations.  *See*, *e.g.*, *Doe v. W. New Eng. Univ.*, 228 F. Supp. 3d 154 (D. Mass. 2017); Order, *Doe v. Williams Coll.*, No. 3:16-cv-30184 (D. Mass. Nov. 29, 2016), Dkt. No. 10; Order on Plaintiff's Motion to Proceed Under Pseudonym, *Doe v. Amherst Coll.*, No. 3:15-cv-30097 (D. Mass. June 30, 2015), Dkt. No. 16; Electronic Clerk's Notes, *Doe v. Amherst Coll.*, No. 3:14-cv-30114 (D. Mass. July 15, 2014), Dkt. No. 31; Order Granting Leave to File Under Pseudonym and Protective Order, *Doe v. Williams Coll.*, No. 1:13-cv-11740 (D. Mass. Sept. 5, 2013), Dkt. No. 12.  The Court should permit it here as well.

> **a.     John Doe 1, John Doe 2, and John Doe 3's identities have to date been kept confidential.**

The first factor weighs in favor of pseudonymity.  John Doe 1, John Doe 2, and John Doe 3's identities are not publicly known and they have taken scrupulous steps to keep their identities confidential.  John Doe 1, John Doe 2, and John Doe 3 have not disclosed their involvement in this matter beyond a close circle of confidants and attorneys retained to offer counsel.

   **b.** **The potential harms to John Doe 1, John Doe 2, and John Doe 3 that would result from disclosure of their identities are substantial and irreparable.**

  The second factor also weighs in favor of pseudonymity because the revelation of John Doe 1, John Doe 2, and John Doe 3's identities would result in significant harm to them of exactly the kind this lawsuit seeks to remedy.

  If the Court requires John Doe 1, John Doe 2, and John Doe 3 to reveal their identities, even if they ultimately obtain a favorable judgment, their future academic and career prospects will nonetheless be irreparably harmed.  Any graduate school or potential employer could discover by way of a simple internet search that John Doe 1, John Doe 2, and John Doe 3 were involved in a lawsuit concerning a student disciplinary policy that Defendants justify on the grounds that students like John Doe 1, John Doe 2, and John Doe 3 are responsible for Harvard's troubling record on sexual assault and for furthering misogyny, racism, homophobia, and sex discrimination at Harvard.  The district court in *Doe v. Trustees of Dartmouth College* recognized as the most significant factor in its analysis the plaintiff's concern that public disclosure would forever subject him to reputational damage and impair his future educational and career prospects, regardless of the outcome of the litigation.  No. 18-CV-040-LM, 2018 WL 2048385, at \*\*5–6 (D.N.H. May 2, 2018).  The court agreed that this concern was "exacerbated in the Internet age, which can provide additional channels for harassment and will connect plaintiff's name to Dartmouth's findings and sanction forever, whether or not he is successful in this litigation."  *Id.* at \*5.

  The nature of the internet today is such that any plaintiff is readily identifiable, and his information accessible via a simple online search.  *See Doe v. Purdue Univ.*, 321 F.R.D. 339, 343 (D. Ind. 2017).  Without a means to control the content disseminated by a media outlet covering a given case, courts must be willing to afford additional protective measures to avoid further

damage to a plaintiff involved in a matter concerning such egregious and unfounded accusations as the present one.  Critically, as is the case here, "public identification . . . will defeat the very purpose of this litigation."  *Doe v. Trs. of Dartmouth Coll.*, 2018 WL 2048385, at *6.  John Doe 1, John Doe 2, and John Doe 3 would have been entitled to use pseudonyms before the internet, but they have an even greater need for them now because of it.  *See EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 112-13 (E.D.N.Y. 2003) (finding "concrete and cognizable interest in proceeding by pseudonym" based in part on "access to court files by those surfing the Internet"); *see also* Jayne S. Ressler, *Privacy, Plaintiffs, and Pseudonyms: The Anonymous Doe Plaintiff in the Information Age*, 53 U. Kan. L. Rev. 195, 196-205 (2004).

Second, John Doe 1, John Doe 2, and John Doe 3 should be permitted to proceed under pseudonyms given the extremely inflammatory nature of Harvard's justifications for the Sanctions Policy.  John Doe 1, John Doe 2, and John Doe 3 do not merely contend that the revelation of their names would result in embarrassment or public humiliation.  Rather, John Doe 1, John Doe 2, and John Doe 3 fear that they will be associated with false allegations of sexual misconduct and racial bigotry.  As observed by the Northern District of New York, in a case where a student is challenging a university's disciplinary finding related to a sexual misconduct allegation, "forcing Plaintiff to reveal his identity would not advance any aspect of the litigation but instead poses a risk that Plaintiff would be subject to unnecessary ridicule and attention."  *Doe v. Colgate Univ.*, No. 15-cv-1069 (LEK/DEP), 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016).

Given the potential privacy harms involved, numerous courts around the country, including the District of Massachusetts, have allowed plaintiffs challenging the disciplinary policies of their colleges and universities to proceed pseudonymously.  *See, e.g., Doe v. Brown*

*Univ.*, 210 F. Supp. 3d 310 (D.R.I. 2016); *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016);

*Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561 (D. Mass. 2016); *Doe v. Univ. of S. Fla. Bd. of Trs.*,

No. 15-cv-682-T-30EAJ, 2015 WL 3453753 (M.D. Fla. May 29, 2015); *Doe v. Salisbury Univ.*,

107 F. Supp. 3d 481 (D. Md. 2015).   John Doe 1, John Doe 2, and John Doe 3 should similarly

be permitted to proceed anonymously due to the highly sensitive and personal nature of being

falsely linked to sexual misconduct and racial bigotry.

### c. Disclosure of John Doe 1, John Doe 2, and John Doe 3's identities would result in significant harm to them.

John Doe 1, John Doe 2, and John Doe 3 should further be permitted to proceed

pseudonymously in this matter because if they were forced to disclose their identities in this

action, the very "injury litigated against would occur as a result of the disclosure." *Bell Atl.*, 162

F.R.D. at 420; *Doe v. Rostker*, 89 F.R.D. 158, 161-62 (N.D. Cal. 1981) (observing that a plaintiff

may proceed pseudonymously if disclosure of his or her name would "indelibly connect" the

plaintiff to a "stigmatizing characteristic[ ]" that "would vitiate the interest [the plaintiff] seek[s]

to protect").   If John Doe 1, John Doe 2, and John Doe 3's identities become a matter of public

record, the negative publicity it would bring to them would entirely defeat the purpose of the

suit, which is to avoid the harm to their reputations and educational and employment prospects

from the University's biased and irreparably tainted Sanctions Policy.   *See Doe v. Rector &*

*Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 614, n.9 (E.D. Va. 2016) ("In the context

of academic discipline, the possibility that a disciplinary violation will interfere with later

opportunities for higher education and employment is so clear as to almost be a truism." (internal

citations and quotations marks omitted)).   If John Doe 1, John Doe 2, and John Doe 3 are forced

to prosecute the case in their own names, they will be easily identified by Harvard alumni and

faculty alike, and may be associated with the negative stereotypes and allegations that have been disseminated by Defendants. Such disclosure would render useless the suit's primary aim.

Additionally, there is significant risk that Harvard and its supporters, including Harvard professors and members of the general public, may try to retaliate against or harass John Doe 1, John Doe 2, and John Doe 3 for seeking to vindicate their rights in this lawsuit. This is far from a speculative concern. *See* Fisher Decl. As is often the case, allegations of Title IX violations in an educational setting often invite media attention and elicit comments from both school supporters and detractors which, if John Doe 1, John Doe 2, and John Doe 3's identities are disclosed, may be directed toward them. These are reasonable concerns in light of past instances where plaintiffs bringing suit against an educational institution have experienced harassment and threats (as in *Fisher v. University of Texas at Austin*), and in light of the harsh statements that Harvard and some of its professors have made about individuals like John Doe 1, John Doe 2, and John Doe 3.

Based on the foregoing, John Doe 1, John Doe 2, and John Doe 3 should be permitted to proceed pseudonymously, as requiring them to reveal their identities would result in significant harm to them, including the exact harms they seek to remedy in this matter: namely, the loss of educational and career opportunities, and damage to their reputations, resulting from Harvard's Sanctions Policy.

> **d.      Defendants will not be prejudiced by allowing John Doe 1, John Doe 2, and John Doe 3 to proceed pseudonymously.**

Further, the Court should permit John Doe 1, John Doe 2, and John Doe 3 to proceed pseudonymously because Defendants will not be prejudiced by John Doe 1, John Doe 2, and John Doe 3's pseudonymous status. As other courts have found, pseudonymity causes no prejudice where the plaintiff's identity is not itself a material fact in the lawsuit. *See Doe No. 2*

*v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006).  Defendants' counsel will have an unobstructed opportunity to conduct discovery, present their defenses and litigate this matter, regardless of whether John Doe 1, John Doe 2, and John Doe 3's identities are disclosed to the public at large or Defendants themselves.  Accordingly, permitting John Doe 1, John Doe 2, and John Doe 3 to proceed pseudonymously will not hinder Defendants' ability to defend this lawsuit.

Moreover, Harvard "is not an ordinary private party, with interests relating solely to its personal life and business reputation" but is, rather, a school "organized solely to perform an important, public service"—educating young adults.  *See N.Y. Blood Ctr.*, 213 F.R.D. at 112. This case is therefore more "analogous to one involving a government defendant, where personal anonymity is more readily granted because of the existence of a public interest in the action and a lesser interest in personal reputation."  *Id.*  As such, there is no meaningful prejudice to Defendants that would result from John Doe 1, John Doe 2, and John Doe 3's use of pseudonyms.

      e.      **There is a weak public interest in knowing John Doe 1, John Doe 2, and John Doe 3's identities.**

John Doe 1, John Doe 2, and John Doe 3 should also be permitted to proceed pseudonymously because the public does not have a strong interest in knowing their identities. The public's interest in this matter would not be furthered by disclosing John Doe 1, John Doe 2, and John Doe 3's identities, as their challenge to the Sanctions Policy concerns the male student population at Harvard as a whole, as well as women who are members of single-sex organizations.  *See Kolko*, 242 F.R.D. at 195.  Accordingly, there is not a strong public interest in knowing John Doe 1, John Doe 2, and John Doe 3's identities as individuals, as the issues presented to this Court concern a much greater population of potential plaintiffs.  Considering

the purely legal nature of the claims presented, there is a weak public interest in learning John

Doe 1, John Doe 2, and John Doe 3's identities as individuals.

Moreover, given the nature of the case, "[p]arty anonymity [will] not obstruct the

public's view of the issues joined or the court's performance in resolving them." *Doe v. Stegall*,

653 F.2d 180, 185 (5th Cir. Unit A Aug. 1981).  All filings submitted to the Court will be a

matter of public record, and will be available for public review.  Thus, the public's knowledge

will only be minimally restricted as it will still know what is alleged to have occurred in the

formation and enforcement of Harvard's Sanctions Policy and how John Doe 1, John Doe 2,

and John Doe 3 have been affected by it.

In fact, the public interest in the vindication of the Title IX and equal protection rights at

issue in this case strongly militate in favor of pseudonymity.  Courts have found the public

interest is served by protecting the identities of parties when the issues involved are matters of a

private, highly sensitive nature, and forcing the plaintiff to reveal his or her identity would deter

the plaintiff or similar litigants from asserting their rights.  Courts have also determined that there

is a substantial public interest in ensuring that cases involving important issues like those in this

case are adjudicated without the risk of stigmatization.  *See, e.g.*, Order at 3-5, *Doe v. Swarthmore

Coll.*, No. 2:14-cv-00532-SD (E.D. Pa. Jan. 29, 2014), Dkt. No. 3 (granting motion to proceed

under pseudonym and finding the plaintiff's application of the *Provident Life* factors to his case

"compelling").[1]  John Doe 1, John Doe 2, and similarly situated individuals would be chilled

---

[1] *See also D.M. v. Cty. of Berks*, 929 F. Supp. 2d 390, 402 (E.D. Pa. 2013) (finding that "disallowing anonymity would likely deter those who have been falsely accused of sexual abuse from vindicating their rights"); *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 550 (D.N.J. 2006) (allowing plaintiff to proceed using a fictitious name where disclosure of plaintiff's bipolar disorder would risk stigmatization in his community and career); *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (finding public has interest in protecting sexual assault litigants so that other victims will sue to vindicate their rights); *Roe v. Borup*, 500 F. Supp. 127, 130 (E.D. Wis. 1980) (allowing use of fictitious name in case involving false

from bringing this and similar lawsuits if their identities were required to be disclosed, given the highly personal and prejudicial nature of the issues involved, the potential for retaliation and harassment, the potentially irreparable impact on future academic and career opportunities, and the minimal public need for disclosure of their identities.

> **f.  Additional considerations weigh in favor of permitting John Doe 1, John Doe 2, and John Doe 3 to remain pseudonymous.**

The remaining *Provident Life* factors likewise weigh in favor of permitting John Doe 1, John Doe 2, and John Doe 3 to proceed pseudonymously.  John Doe 1, John Doe 2, and John Doe 3 have no nefarious ulterior motives in seeking to use pseudonyms and they are not public figures.

## II.  THE COURT SHOULD ISSUE A PROTECTIVE ORDER TO PROTECT JOHN DOE 1, JOHN DOE 2, AND JOHN DOE 3'S IDENTITIES.

Should the Court grant plaintiffs leave to proceed under pseudonyms, it should also issue a protective order in aid of its ruling that would (a) protect John Doe 1, John Doe 2, and John Doe 3's identities from disclosure to Defendants or any third party unless such disclosure is necessary to defend against this action or to comply with any orders this Court may enter, and (b) require any party that publicly files a document identifying John Doe 1, John Doe 2, and John Doe 3 to redact all personal identifiers therein in accordance with Fed. R. Civ. P. 5.2.

## CONCLUSION

For these reasons and such other reasons as may appear just to the Court, Plaintiffs request that the Court grant Plaintiffs' Motion for Leave of Court to Permit Student Plaintiffs to Proceed Under Pseudonyms and for a Protective Order to Protect Their Identities.

---

allegations of child sexual abuse); *Doe v. Standard Ins. Co.*, 2015 WL 5778566, at *3 ("To deny Plaintiff's request . . . might not only prevent Plaintiff from proceeding on her claim, but might also discourage others who suffer from a serious mental health condition from asserting their claims for mental health related benefits to which they are entitled . . . .").

Dated:  December 3, 2018                    Respectfully submitted,


                                            **ARNOLD & PORTER**
                                              **KAYE SCHOLER LLP**


By:   */s/ John A. Freedman*
      R. Stanton Jones*
      John A. Freedman (BBO # 629778)
      Andrew T. Tutt*
      601 Massachusetts Ave., NW
      Washington, DC 20001
      (202) 942-5000
      stanton.jones@arnoldporter.com
      john.freedman@arnoldporter.com
      andrew.tutt@arnoldporter.com

      Sara L. Shudofsky*
      Ada Añon*
      250 West 55th Street
      New York, NY 10019
      (212) 836-8000
      sara.shudofsky@arnoldporter.com
      ada.anon@arnoldporter.com

      Alexa D. Jones*
      370 Seventeenth Street, Suite 4400
      Denver, CO  80202
      (303) 863-1000
      alexa.jones@arnoldporter.com

      *Counsel for Plaintiffs*

      * Motions for pro hac vice admission forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that this document, along with the Summons and Complaint, will be served on the Defendants in accordance with Fed. R. Civ. P. 4.

*/s/ John A. Freedman*
John A. Freedman (BBO # 629778)
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5000
john.freedman@arnoldporter.com